22

United States District Court

Eastern District of Michigan

Southern Division

Cooper Street Correctional Facility
Employees, All inmates
Joinder of Parties

Plaintiffs,

Case: 2:20-cv-12157
Judge: Murphy, Stephen J.
MJ: Morris, Patricia T.
Filed: 08-4-2020 At 10:33 AM
PRIS TRUSS JR .V. WASHINGTON ET AL (DA)

VS

( Class Action
  Jury Demand )

Heidi Washington in her official capacity as
Director of Michigan Department of Corrections
Dennis Straub in his official capacity as
Deputy Director.

Defendants,

Earl Flynn Truss Jr #174843
Plaintiff Interest Party in Pro-se
Cooper Street Corr. Facility
3100 Cooper, Street
Jackson Mich, 49201

Heidi Washington / Dennis Straub
Defendants
P.O. BOX 30003
Lansing Mich, 48909

Emergency Covid-19
Civil Complaint with Jury Demand

Now comes, Earl Truss Jr, Proceeding in Pro-se, And on behalf
of himself And All others similarly situated in A class Action
complaint Against the Above named defendants states As follows:

## Preliminary Statement

This is an Action seeking monetary Damages And injunctive And declaratory Relief where the Corrections Facility Administrator Acting on behalf of the Michigan Department of Corrections director, transferred Prisoners who Previously tested Positive For Covid-19, into (JCS) cooper Street corr. facility, where at this facility all prisoners were Previously tested with no positive cases. The Action took by the (CFA) Deputy Director Potentially Jeopardized the health of all employee's And inmates At the Facility which violates their 8th Amendment Rights to be Free from cruel And unusual Punishments And A deliberate indifference to their future health being Put At Risk or death.

## Jurisdiction

1. This is A civil Action Authorized by 42 U.S.C. section 1983 to Redress the deprivation, under color of state law, of Rights secured by the Constitution of the United States. The Court has Jurisdiction under 28 U.S.C. section 1331 And 1343(a)(3). Plaintiff's seeks declaratory Relief Pursuant to 28 U.S.C. section 2201 And 2202. Plaintiffs' claim for injunctive Relief ARE Authorized by 28 U.S.C. section ~~2283~~ 2283 And 2284 And Rule (65) of the federal Rules of civil Procedure.

2) The Eastern District of Michigan is an Appropriate Venue under 28 U.S.C. 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## Introduction

3) This is An Action to seek monetary damages for potential future health Problems with Covid-19, because of the actions of the Prison Administrators As well As injunctive Relief to Prevent future Prisoners that Previously tested Positive coming into ▬▬(JCS) prison And A declaratory ruling that the (MDOC) must Allow the warden to social distance here Prison to Prevent the spread of Covid-19, this Action is brought by A state Prisoner where his ▬▬, 8th, ▬▬ U.S. Constitutional Right to be Free From cruel And unusual Punishment where the Plaintiff's rights has been cached in terms of the Prisoner's Right to be Free From An Abuse of discretion on Part of Prison Administrators. Protection from unconstitutional Administrative action, Protection of A Prisoner And Employee's life And health From Administrative Action.

# Parties

4) Plaintiff, Earl Flynn Truss, is An interest Party At All times mentioned herein A Prisoner of the state of michigan in the custody of the michigan Department of Correction. He is currently confined At the Cooper Street Correctional Facility (JCS).

5) Permissive Joinder, Rodney Williams, Inmate No. 278393, is An interest Party at All times A prisoner of the state of michigan in the custody of the michigan Department of Correction. he is currently confined At the cooper street Correctional Facility (JCS).

6) Permissive Joinder, Jerome matthews, Inmate No. 375577, is An interest Party At All times A prisoner of the state of michigan in the Custody of the michigan Department of Correction. he is currently confined At the cooper street Correctional Facility confined At the cooper street Correctional Facility. (JCS).

7) Permissive Joinder, Robert Burr, Inmate No. 515564, is An interest Party At All times A prisoner of the state of michigan in the Custody of the michigan Department of Corrections, he is currently Confined At the Cooper Street Correctional Facility Confined At the Cooper street Correctional Facility (JCS).

8) First Subclass (Inmate Population) is defined As All Current And Future Persons incarcerated At the Cooper Street Corr. Facility during the course of the covid-19 Pandemic who have not tested Postive on may 19, 2020 At (JCS).

9) The Second SubClass, (All Employee's) is defined As All current And Future Persons working At the Cooper Street Corr. Facility during the corse of the Covid-19 Pandemic who have been here before And since may 19th, 2020, when the Prison Population was tested for Covid-19.

10) The third class (medically-Volnerable subclass) is defined As All Prisoners in special housing unit (B) who Are Also over the Age of Fifty who, Regardless of Age, experience An underlying medical Condition that Places them At Particular Risk of serious illness or death From Covid-19.

11) Defendant, Dennis Steab, was At All times Corrections Facility Administrator Deputy Director For the Michigan Department of Corrections Located At: P.O. Box 30003, Lansing Mich. 48909.

12) Defendant, Heidi Washington, was At All times Director For the Michigan Department of Corrections Located At: P.O. Box 30003, Lansing Mich. 48909

Concise Factual Allegations

13) On or About January of 2020, Warden Michelle Floyd of the Cooper Street Correctional Facility had Put the whole Prison on quarantine From Any outside Visters due to A bad Strain of the Flu going thereout the Prison.

14) This quarantine continues today because of the Covid-19 Pandemic that hit the Prison system throwout Michigan

15) (JCS) is a low-security Prison in Jackson Michigan, designed to house Approximately One thousand, seven hundred And Fifty Two (1,752) inmates.

16) There Are eleven (11) housing units that Consist Of At least One hundred sixty (160) inmates housed in Each unit.

17) Each side of A housing unit contains inmates sharing cubes or dormitory type living quarters and inmates sleep A few feet away from each other with eight (8) men in Each cube.

18) Because of Covid-19, the warden emplemented Protocols to Prevent the spread of Covid-19 in the facility by Passing out masks to every inmate And encouraged Social distancing throwout the Prison Population, by Putting up markers going to chow hall And any event that the mass population had to use.

19) On May 19, 2020 the whole Prison Population was tested for Covid-19, At which time the Population was reduced to only ~~(illegible)~~ One thousand, three hundred And eighty (1,380) inmates due to the fact that inmates were being Released on Parole going home, All the test Results for the whole Prison Population came back Negative.

-5-

20) Because of this the warden started implementing social distance in the housing units by reducing the number of inmates living in the cubes.

21) At the beginning of June the Prison Population had reduced down to one thousand, three hundred and sixty eight (1,368) inmates

22) On or about June 1st, the Deputy Director Dennis Staub Approved inmates to be transferred into (JCS) Facility

23) On or about June 4th, 2020 Approximately 30 inmates were transferred into (JCS) Some who Previously tested Positive for Covid-19, who Contracted it At (RGC) Reception Guidance Center for Inmates coming into the Prison System.

24) Also on July 10th, 2020 Approximately 48 inmates were transferred into (JCS) From (RGC) Some who were Previously diagnosed has being ~~Positive~~ Positive For Covid-19. See (Attached Affidavits)

25) Now the (CFA) Deputy Director is transferring more inmates into (JCS) interfering with the warden implementation of Social Distance At the Facility And inmates who Previously had covid-19, Over the Objections of the warden who has Never had A Positive case At the Facility when All inmates were tested on may 19, 2020

26) According to the Director's office memorandum 2020-30R3 dated May 27, 2020 from Director Heidi E. Washington, no transfers shall be made unless approved by the (CFA) Deputy Director.



## Exhaustion of legal Remedies

27) Plaintiff Filed an InterDepartmental Grievance to the Director's office with no response. See (Attached Grievance hereto)

## Substantial claims

28) That all times Relevant to the events described herein, the defendants were engaged in a Joint venture. The defendants assisted each other in Performing the various acts described herein and lent their support and authority of their titles to each other during said events.

29) That as a direct and Proximate Result of said acts of the defendants who acted with a willful, wanton, and Reckless disregard of and indifference to Plaintiff's constitutional guaranteed Right to be Free from a substantial Risk to serious harm.

A) Violation of Plaintiff's 8th amendment constitutional rights that there was very likely to cause Future illness or possibly death by needless exposure to Covid-19.

<u>COUNT ONE</u> - 42 U.S.C. § 1983

30) PARAGRAPH 1 THRU 29 ARE incorporated herein by Reference

31) That the defendants, EACH of them, deprived Plaintiff's of having A decision on who should be Allowed into the Prison where there Were no Positive Cases of Covid-19, this Action constituted A deliberate indifference to their Rights, in violation of the eighth Amendments, to be free from cruel And unusual Punishment And exposure to A deadly disease. That Prevented the implementation of CDC guidelines to social distance the Prison Population Appropriately.

Wherefore Plaintiff Respectfully Ask this Honorable Court to enter A Judgment granting Plaintiff's:

A) A declaration that the Acts described herein violated Plaintiffs Rights under the Constitution And laws of the United States.

B) A Preliminary And Permanent indunction ordering All inmates transfered into the facility who Previously tested Positive for Covid-19 Removed from the Facility And A order to Cease All transfers into the insitution who have tested Positive And to get the Prison Population At A minimum to Allow the warden to Practice social distance in this kind of Environment.

C) Award Punitive damages in the Amount of Three hundred million dollars. (300,000,000) to the Plaintiff's Against the defendants Jointly.

D) A Jury trial one All issues triable by Jury

E) Plaintiffs Cost in this suit.

F) Any Additional Relief this Court deems Just.

Date: 7/27/ 2020

Interest Party,

_Earl Truss Jr_
EARL Truss Jr # 174843

Interest Party,
_Rodney L Williams_
Rodney williams # 278393

Interest Party,

_Jerome Matthews_
Jerome Matthews # 375577

Interest Party,

Robert C. Burr II
Robert Burr # 515564

— 9 —

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____   Grievance Identifier: | | | | | | | | | | | | | |

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| EARL TRUSS | 174843 | JCS | I-13 | on-going | 7/12/2020 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _on-going_
If none, explain why. _I talked to warden Floyd As to why did she Allow Prisoners Into the Facility that had Covid-19 before, they said it came from Lansing_

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. _This grievance is on behalf of (Jcs) cooper street corr. Facility, staff and inmates. On several occassions Director Heidi washington has approved transfers for inmates from RGC, to be transfered into (Jcs) on several occassions who were previously postive for covid-19, This Action shows A deliberate indifference to the staff And inmates At this facility who were previously tested And All Prisoners were negative by bringing in inmates who had covid-19, has Put Everyone At this Facility At Risk and has Potentially exposed them to Covid-19, this deliberate indifference could Potentially be harmful For All at this facility, to Remedy this grievance those inmates sent here who Previously had covid-19, need to be Removed From this facility_

_Earl F Truss_
Grievant's Signature

RESPONSE (Grievant Interviewed?  ☐ Yes  ☐ No   If No, give explanation.  If resolved, explain resolution.)

_____   _____   _____   _____
Respondent's Signature         Date            Reviewer's Signature          Date

_____   _____   _____   _____
Respondent's Name (Print)     Working Title    Reviewer's Name (Print)      Working Title

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | | |
|---|---|---|---|
| | | Grievant's Signature | Date |

DISTRIBUTION:  White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant



*Exhibit A*

STATE OF MICHIGAN
DEPARTMENT OF CORRECTIONS
LANSING

GRETCHEN WHITMER
GOVERNOR

HEIDI E. WASHINGTON
DIRECTOR

**DIRECTOR'S OFFICE MEMORANDUM 2020 – 30R3**          **EFFECTIVE:** Immediately

**DATE:**          May 27, 2020

**TO:**          Executive Policy Team
                 Administrative Management Team
                 Wardens

**FROM:**          Heidi E. Washington, Director

**SUBJECT:**          COVID-19

**SUPERSEDES DOM 2020 – 30R2 (effective 05/26/2020)**

The MDOC is taking many steps to protect staff and prisoners from the spread of COVID-19, including developing isolation areas to place and treat prisoners who have tested positive for COVID-19 or who are under investigation for having COVID-19, as well as those who have had close contact with a known-positive COVID-19 individual.  This DOM outlines the precautions staff shall take to help prevent COVID-19 from spreading.  This DOM controls when in conflict with any other DOM or Department policy or procedure.

PERSONAL PROTECTIVE EQUIPMENT (PPE)

At a minimum, all staff and prisoners shall always wear a mask, except while eating or showering.  Additionally, required PPE shall be worn by staff at all times when they are in an isolation area, transporting a prisoner with a confirmed or suspected case of COVID-19, packing the property of a prisoner with a confirmed or suspected case of COVID-19, or at any time the staff member has close contact (i.e., within six feet) with an offender (i.e., prisoner, parolee, probationer) who has a confirmed or suspected case of COVID-19.  As outlined in the approved protocol, PPE shall include an N95 or other mask, a gown, eye protection, and gloves.  PPE worn in an isolation area shall be removed before going to another area of the facility.

SCREENING OF INDIVIDUALS BEFORE ENTERING A FACILITY OR OFFICE BUILDING

All individuals shall be screened for potential signs and symptoms of COVID-19 before entering a correctional facility or office building.  Any individual who shows symptoms of COVID-19 shall be denied entry.  Consistent with Executive Order 2020-36, employees who are feeling sick with any

illness must stay home.

SOCIAL DISTANCING

In accordance with the Centers of Disease Control (CDC) recommendations, social distancing recommendations shall be followed at all times, including programing, classrooms, chow lines, staff screenings, office buildings, etc. This means that there shall be a distance of at least six feet between all individuals. Staff meetings and other group interactions of 10 or more individuals shall be limited. Technology must be used in place of group interactions, when possible.

ISOLATION AREAS

The CFA Deputy Director shall determine where isolation areas are located. A prisoner who tests positive for COVID-19 shall be placed in quarantine in a designated isolation area as soon as resources permit regardless of their security level or prior criminal history. All of the requirements set forth in PD 03.03.130 "Humane Treatment and Living Conditions for Prisoners" apply to prisoners in an isolation area with the exception of two hours of indoor/outdoor recreation. Psychological services shall be provided to a prisoner in an isolation area only when immediate intervention is needed as determined by the Chief Psychiatric Officer (CPO). The CFA Deputy Director shall consult with the Office of Legal Affairs Administrator and the BHCS Administrator to determine what movement and activities may take place in an isolation area including access to programming, religious services, and law library material. At no time shall a prisoner who is placed in an isolation area be permitted outside of the area, unless it is for an emergency, or as approved by the Assistant Deputy Director (ADD). If a prisoner becomes extremely disruptive while in an isolation area, staff may use management techniques and equipment as set forth in PD 04.05.112 "Managing Disruptive Prisoners." Staffing levels in an isolation area shall be determined by the Warden.

A sign shall be placed outside of each isolation area that notifies staff that they are about to enter a restricted area, and what PPE shall be worn before entering the area. Only staff approved by the Warden or designee may enter an isolation area, unless an emergent situation (e.g., any situation that would require a critical incident report to be written) arises.

OP 04.04.100 Attachment A "Items Allowed Without a Gate Manifest" permits staff at Newberry Correctional Facility (NCF), Ionia Bellamy Creek (IBC) Dormitory, and Kinross Correctional Facility (KCF) K-Unit to bring their lunch through the gate. This DOM expands OP 04.04.100 Attachment A to allow employees working in an isolation area to bring their lunch through the gate to the isolation area with prior approval of the CFA Deputy Director. Lunches must be in a paper or plastic bag and contain food, drink, and plastic silverware items only. No lunchboxes, coolers, metal or glass containers will be allowed. The Shift Commander has discretion to reject any lunch item that may jeopardize the security of the facility (e.g., sharp bones, excessive quantities).

The BHCS Administrator shall ensure cleaning procedures are in place for isolation areas. Volunteer prisoner porters will be assigned to the isolation area and will clean as needed. Prisoner porters will be provided with appropriate PPE, when available. Staff shall document that PPE was provided to the porters in the logbook.

A prisoner shall only be released from an isolation area after they have been cleared by a Physician,

and approval from the BHCS Administrator or Chief Medical Officer/Assistant Chief Medical Officer has been obtained.

## PRISONERS UNDER INVESTIGATION FOR COVID-19

Separate isolation areas shall also be developed for prisoners who are under investigation (PUIs) for having COVID-19 as well as for those who have had close contact with a PUI or known-positive COVID-19 individual (Close Contacts), as necessary. The isolation areas for PUIs shall follow the same criteria as the isolation areas for prisoners with confirmed cases of COVID-19. A PUI shall be placed alone in a cell pending the outcome of their test results. Staff transporting a PUI shall wear the same PPE that is required for transporting a prisoner with confirmed COVID-19.

## PRISONER PERSONAL PROPERTY

To control the spread of the COVID-19 virus that may be lying dormant, facility staff shall secure and inventory the property of prisoners with confirmed COVID-19 as well as PUIs and Close Contacts if the prisoner is placed in an isolation area. Prisoner property shall not be allowed while in an isolation area. However, prisoners placed in an isolation area shall be allowed access to their legal property as necessary. Staff shall wear gowns, eye protection, masks, and gloves when handling the property. Perishable food items that are not in a sealed or unopened container shall be discarded. A prisoner's property shall be immediately returned to them once they are released from the isolation area.

## PRECAUTIONS IN CFA FACILITIES

### Intake

Every male or female processed through a reception & guidance center shall be given COVID-19 nasal swab test, as well as an antibody test.

Pursuant to Executive Order 2020-62, all transfers into the Department's custody are temporarily suspended until the Director determines the jail or lockup has satisfactorily implemented risk-reduction protocols as described in section 1 of the EO. If the Director determines transfers from a specific jail or local lockup can resume as laid out in section 4 of the EO, then the Department will also accept returns of prisoners currently released on a valid court writ.

### Alcohol-Based Hand Sanitizer and Wipes

Until further notice, alcohol-based hand sanitizer and wipes that are provided to correctional facilities by the Department shall be permitted within the secure perimeter of a correctional facility for use by staff. Hand sanitizer shall not be used in place of good hand washing technique. When not in use, the hand sanitizer and wipes shall be stored in accordance with Chapter 12 of the Environmental and Waste Management Plan. Staff shall not be permitted to bring personal alcohol-based hand sanitizer or wipes through the gate.

### Gate Security

The number of individuals allowed in the gate area has decreased from eight to four.

During the pendency of this pandemic only, Directors of Nursing (DONs) are authorized to possess their Department-issued cellular telephones inside the secure perimeter of a facility.

Staff are permitted to bring in the following items without a gate manifest:

1. Department-issued hand sanitizer and wipes
2. Acceptable gloves made of vinyl, nitrile, or latex;
3. Surgical masks made from polypropylene, polystyrene, polycarbonate, polyethylene, cotton, or polyester. They may be disposable or reusable (require washing); and
4. Disposable or reusable fabric gowns.

Reassignment of Staff

Staff shall be reassigned as necessary to meet the needs of the facility or the Department.

Visits, Telephone Calls, and JPay

Prisoner visits shall be suspended until further notice, including visits/programming from volunteers. In lieu of visits, prisoners may be provided with additional phone calls or JPay stamps.

Attorney Visits

To reduce the number of people entering facilities, attorneys shall be encouraged to speak with their clients via phone instead of conducting an in-person visit. While prisoners may continue to use the GTL phone system to call their attorneys, attorneys may contact the facility to request the opportunity to speak with their clients in lieu of an attorney visit. If requested, staff shall promptly arrange calls between attorneys and their clients and provide the prisoners with an opportunity to make this call. Accommodations shall also be made to assist attorneys with getting documents signed and returned via email or fax, if requested, to prevent unnecessary attorney visits to the facility. All in-person attorney visits must be approved by the appropriate ADD.

Parole Board Representatives

Prisoners are allowed one representative at Parole Board hearings, but the representative may only attend via telephone or other available electronic means.

Large Gatherings

All large in-person gatherings shall be canceled including graduations, trainings, and job fairs. Annual fit testing shall be postponed. The following training shall be permitted:

1. Weapons
2. SCBA
3. Expirations
4. CCMW
5. Court-ordered/settlements

6.  Deaf and/or Hard of Hearing Prisoners
7.  New Orientation

All staff are still required to complete computer-based training (CBT).

<u>Transfers and Cell Moves</u>

No transfers shall be made unless approved by the CFA Deputy Director.  Cell moves shall only be made if absolutely necessary (e.g., medical, PREA).  If a prisoner needs to be transferred to an isolation area, transportation staff shall wear all required PPE.

If a prisoner is classified to administrative segregation at a facility that does not have administrative segregation, or if the Security Classification Committee (SCC) determines a prisoner in temporary segregation needs to be transferred to an alternative placement, the prisoner may be housed in temporary segregation at their current facility beyond the time frames that are outlined in Paragraph P of PD 04.05.120 "Segregation Standards."  The Warden may designate additional cells at their facility as temporary segregation cells if necessary.

<u>Overtime Procedures for Security Unit Employees</u>

With approval of the appropriate ADD, probationary employees may be authorized to work voluntary and mandatory overtime prior to completing six months of satisfactory service.  During the pendency of this pandemic, mandatory overtime shall be assigned using 100 percent of the shift seniority list for the departing shift on a rotational basis.  Mandatory overtime shall be tracked in accordance with DOM 2020-26 "Overtime Distribution Process for Security Unit Employees."

<u>School and Programming</u>

School classes and programming may be canceled as determined by the Warden or their designee in consultation with the appropriate ADD.  The number of prisoners in each program shall be reduced to allow for appropriate social distancing.  When possible, prisoners attending the class/program shall be seated a minimum of six feet apart.  Face-to-face college courses shall be suspended.

<u>Searches</u>

Clothed-body or thorough pat-down searches of prisoners, as outlined in PD 04.04.110 "Search and Arrest in Correctional Facilities" Paragraph T, are suspended for (1) prisoners who have tested positive for COVID-19, (2) PUIs, and (3) are a Close Contact.  Similarly, the searches of prisoner living areas, as outlined in PD 04.04.110 Paragraph V, are suspended for cells or areas whose occupants (1) have tested positive for COVID-19, (2) are a PUI, and (3) Close Contacts.  The search of common areas is still required and shall be completed when prisoners are not present.

In the event a suspended pat-down search or cell search is required, the staff conducting the search shall wear PPE.

Exhibit -B

## Declaration/Affidavit of Edward Cousineau III

<u>Take Notice</u> to all whom would have and/or be in Possession of this herein Declaration/Affidavit of Edward Cousineau, That I, Edward Cousineau (hereinafter referred to as the Affiant), do solemnly swear to the best of my information, belief and understanding of the law, depose and say under Penalty of Perjury and Fraud upon the court, by stipulating to the hereinafter below facts as being true, as follows:

1) That I, David Delong, shall be referred to as the "Affiant" in this Declaration/Affidavit.

2) That Affiant is Presently located at: Cooper Street Correctional Facility 3100 Cooper Street, Jackson, Michigan, 49201

3) That Affiant while in (RGC) Reception Guidance Center upon my return to prison Affiant was tested for Covid-19, on May 19th 2020

4) That Affiant Covid Test came back Positive on May 29th, 2020

5) That Affiant was transferred to the Carson City Correctional Facility until July 7th, 2020

6) That Affiant on July 7th, 2020 was then transferred to the Cooper Street Correctional Facility located at 3100 Cooper Street, Jackson, Michigan 49201.

<u>Therefore</u>, Affiant fully understands any False Statements in this Declaration/Affidavit shall subject him to Penalties of Perjury and Fraud upon the Court, Affiant declares that the above

statements Affiant has made within the body of this
Declaration/Affidavit are true, correct, accurate, complete, and
not intended to mislead, and if Affiant is called upon before a
Court of law to testify, Affiant shall aver to the same as herein.

Executed on _7-23-20_ 2020   /s/ ~~Edward Cousineau~~ #539130

Edward Cousineau

## Declaration/Affidavit of David Delong

<u>Take Notice</u> to all whom would have and/or be in Possession of this herein Declaration/Affidavit of David Delong, That I, David Delong (hereinafter referred to as the Affiant), do solemnly swear to the best of my information, belief and understanding of the law, depose and say under Penalty of Perjury and Fraud upon the court, by stipulating to the hereinafter below facts as being true, as follows:

1)   That I, David Delong, shall be referred to as the "Affiant" in this Declaration/Affidavit.

2)   That Affiant is Presently located at: Cooper Street Correctional Facility 3100 Cooper Street, Jackson, Michigan, 49201

3)   That Affiant while in (RGC) Reception Guidance Center upon my return to prison Affiant was tested for Covid-19, on May 19th 2020

4)   That Affiant Covid Test came back Positive on May 29th, 2020

5)   That Affiant was transferred to the Carson City Correctional Facility for 2 weeks.

6)   That Affiant was then transferred to the Cooper Correctional Facility located at 3100 Cooper Street, Jackson, Michigan 49201

7)   Affiant has had Covid-19 Twice, once before returning to Prison and the second time at (RGC).

Therefore, Affiant fully understands any False Statements in this Declaration/Affidavit shall subject him to Penalties of Perjury and Fraud upon the Court, Affiant declares that the above statements Affiant has made within the body of this Declaration/Affidavit are true, correct, accurate, complete, and not intended to mislead, and if Affiant is called upon before a Court of law to testify, Affiant shall aver to the same as herein.

Executed on 7/23rd _____ 2020   /s/ _David Delong 735697_

David Delong



Earl Tauss Jr #174843
Cooper Street Correctional Facility
3100 Cooper Street
Jackson, Mich, 49201

U.S. MARSHALS

8/11/8

c/o Clerk of The Court
U.S. District Court / Eastern District
231 West Lafayette Blvd,
Detroit, Mich, 48226

# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| Case No. 20-12157 | Judge: Stephen J. Murphy, III | Magistrate Judge: Patricia T. Morris |

**Name of 1st Listed Plaintiff/Petitioner:**

EARL FLYNN TRUSS JR.

**Name of 1st Listed Defendant/Respondent:**

HEIDI WASHINGTON ET AL

**Inmate Number:** 174843

**Additional Information:**

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**

Cooper Street Correctional Facility

3100 Cooper Street
Jackson, MI 49201
JACKSON COUNTY

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1.  **Is this a case that has been previously dismissed?**
    - ☐ Yes    ☒ No
    - ➢ If yes, give the following information:
        - Court: _____
        - Case No: _____
        - Judge: _____

2.  **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
    - ☐ Yes    ☒ No
    - ➢ If yes, give the following information:
        - Court: _____
        - Case No: _____
        - Judge: _____